1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF WASHINGTON
9                             AT TACOMA

10  JENNIFER A. PELLINEN,

11                          Plaintiff,              CASE NO. 11cv5576-RBL-JRC

12          v.                                      REPORT AND
                                                    RECOMMENDATION ON
13  MICHAEL J. ASTRUE, Commissioner                 PLAINTIFF'S COMPLAINT
    of the Social Security Administration,
14                                                  Noting Date: July 20, 2012

15                          Defendant.

16

17          This matter has been referred to United States Magistrate Judge J. Richard

18  Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR

19  4(a)(4), and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261,

20  271-72 (1976).  This matter has been fully briefed (see ECF Nos. 14, 20, 23).

21          The ALJ here failed to provide clear and convincing reasons for his failure to

22  credit fully plaintiff's testimony and credibility. Instead, the ALJ relied improperly on

23  plaintiff's activities of daily living without indicating what testimony they contradicted

24

and relied improperly of a lack of medical treatment without first discussing explanations in the record potentially justifying such lack of treatment.

The ALJ also erred in his review of the medical evidence by failing to discuss significant, probative evidence provided by examining doctor, Dr. Bernou; and by failing to provide specific and legitimate reasons for his failure to credit fully the opinions of examining doctor, Dr. Nelson.

Therefore, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration.

BACKGROUND

Plaintiff, JENNIFER A. PELLINEN, was twenty-one years old on her amended alleged onset date of childhood adult disability of December 1, 2001 (Tr. 174; see also Opening Brief, ECF No. 14, p. 1, n.1). Plaintiff has work experience as a baker, a stocker and a clerk, but her earnings have never reached the level of substantial gainful activity (see Tr. 18, 27, 208). Plaintiff's application for Supplemental Security Income payments was approved in February, 2005, however she reported that she stopped working in March, 2008 (see Response, ECF No. 20, p. 4; see also Tr. 92-99, 203).

Plaintiff has alleged that she stopped working because of her "difficulties with normal independent living stuff such as taking medications and getting myself to work when I am supposed to" (Tr. 207). Plaintiff indicated that she "missed work often due to anxiety, [and that she] ha[d] many problems with communication, anxiety, and depression" (id.). As found in the decision regarding her application for childhood

disability benefits, plaintiff has at least the severe impairments of Asperger's disorder,

asthma and depression (see Tr. 18).

As described by one of plaintiff's specialists, examining doctor Dr. Elea Bernou,

Psy.D., plaintiff's Asperger's Disorder "is a developmental condition on the Autism

Spectrum," which, may have "explained plaintiff's years of difficulty" (see Tr. 260). The

Court notes that the ALJ's decision and some of plaintiff's medical records refer to

plaintiff as "Jennifer" and as "her," although some of plaintiff's records refer to plaintiff

as "Erick" and "him" (see, e.g., Tr. 567). This appears to be because plaintiff "was born

Erick Pellinen," however desired "to become a female" (Tr. 261, 568).

PROCEDURAL HISTORY

Plaintiff protectively filed for child disability insurance benefits on March 21,

2008 (Tr. 16, 174-80). Her application was denied initially and following reconsideration

(Tr. 102-04, 109-13). Plaintiff's requested hearing was held before Administrative Law

Judge Gary J. Suttles ("the ALJ") on March 23, 2010 (Tr. 16, 33-91; see also Tr. 92-99).

On April 20, 2010, the ALJ issued a written decision in which he found that plaintiff was

not disabled pursuant to the Social Security Act prior to age 22, as required for purposes

of child insurance benefits when one is over 18 and not demonstrating full time student

status (Tr. 13-29). See 20 C.F.R. § 404.350(a)(5).

On May 24, 2011, the Appeals Council denied plaintiff's request for review,

making the written decision by the ALJ the final agency decision subject to judicial

review (Tr. 1-6). See 20 C.F.R. § 404.981. On July 27, 2011, plaintiff attached to her

motion to proceed in forma pauperis, her complaint, filed in August, 2011, seeking

judicial review of the ALJ's written decision (see ECF Nos. 1, 3). On November 21, 2011, defendant filed the sealed administrative record ("Tr.") regarding this matter (ECF Nos. 9, 10). In her Opening Brief, plaintiff raises the following issues: whether or not the ALJ evaluated properly (1) plaintiff's testimony and credibility; (2) the medical evidence; and plaintiff's residual functional capacity ("RFC") (see ECF No. 14, pp. 2-3). Plaintiff also raises the issue of (3) whether or not the ALJ erred by failing to develop the record fully and fairly; and whether or not the hypothetical presented to the vocational expert on whose testimony the ALJ relied for his step five finding, included all of plaintiff's functional limitations (see id., pp. 2-3).

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999); see also Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering the plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing* Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting* Davis v. Heckler, 868 F.2d 323, 325-26 (9th Cir. 1989)); see also Richardson v. Perales, 402 U.S. 389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Sandgathe v. Chater, 108 F.3d 978, 980 (1996) (per curiam) (*quoting* Andrews, supra, 53 F.3d at 1039). In addition, the Court "'must independently determine whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing* Moore v. Comm'r of the Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r of SSA, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing* SEC v. Chenery Corp., 332 U.S. 194, 196 (1947) (other citation

omitted)); see also Molina v. Astrue, 2012 U.S. App. LEXIS 6570 at *42 (9th Cir. April

2, 2012) (Dock. No. 10-16578); Stout v. Commissioner of Soc. Sec., 454 F.3d 1050,

1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the

agency did not invoke in making its decision") (citations omitted). For example, "the

ALJ, not the district court, is required to provide specific reasons for rejecting lay

testimony." Stout, supra, 454 F.3d at 1054 (citing Dodrill v. Shalala, 12 F.3d 915, 919

(9th Cir. 1993)). In the context of social security appeals, legal errors committed by the

ALJ may be considered harmless where the error is irrelevant to the ultimate disability

conclusion when considering the record as a whole. Molina, supra, 2012 U.S. App.

LEXIS 6570 at *24-*26, *32-*36, *45-*46; see also 28 U.S.C. § 2111; Shinsheki v.

Sanders, 556 U.S. 396, 407 (2009); Stout, supra, 454 F.3d at 1054-55.

DISCUSSION

1. The ALJ failed to evaluate plaintiff's testimony and credibility properly.

If the medical evidence in the record is not conclusive, sole responsibility for

resolving conflicting testimony and questions of credibility lies with the ALJ. Sample v.

Schweiker, 694 F.2d 639, 642 (9th Cir. 1999); Waters v. Gardner, 452 F.2d 855, 858 n.7

(9th Cir. 1971); (Calhoun v. Bailar, 626 F.2d 145, 150 (9th Cir. 1980). An ALJ is not

"required to believe every allegation of disabling pain" or other non-exertional

impairment. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (citing 42 U.S.C. §

423(d)(5)(A)). Even if a claimant "has an ailment reasonably expected to produce some

pain; many medical conditions produce pain not severe enough to preclude gainful

employment." Fair, supra, 885 F.2d at 603. The ALJ may "draw inferences logically

flowing from the evidence." Sample, supra,694 F.2d at 642 (*citing* Beane v. Richardson, 457 F.2d 758 (9th Cir. 1972); Wade v. Harris, 509 F. Supp. 19, 20 (N.D. Cal. 1980)).

Nevertheless, the ALJ's credibility determinations "must be supported by specific, cogent reasons." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted). In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "'must specifically identify what testimony is credible and what evidence undermines the claimant's complaints.'" Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (*quoting* Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)); Reddick, supra, 157 F.3d at 722 (citations omitted); Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." Smolen, supra, 80 F.3d at 1284; see also Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999) (reliance on inconsistent statements concerning drug use proper).

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929; Smolen, 80 F.3d at 1281 (*citing* Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).  First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); Smolen, supra, 80 F.3d at 1281-82.  Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's

testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*) (*citing* <u>Cotton</u>, 799 F.2d at 1407). Absent affirmative evidence that the claimant is malingering, the ALJ must provide specific "clear and convincing" reasons for rejecting the claimant's testimony. <u>Smolen</u>, <u>supra</u>, 80 F.3d at 1283-84; <u>Reddick</u>, <u>supra</u>, 157 F.3d at 722 (*citing* <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1996); <u>Swenson v. Sullivan</u>, 876 F.2d 683, 687 (9th Cir. 1989)).

The ALJ found that plaintiff's medically determinable impairments reasonably could be expected to have caused her alleged symptoms, however, he found that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment" (Tr. 21). The ALJ provided a number of reasons for his failure to credit fully plaintiff's testimony and credibility, including activities of daily living, a lack of medical treatment and lack of support from objective medical evidence (<u>see</u> Tr. 24). However, the Court concludes that these reasons were not clear and convincing reasons, as discussed below. <u>See</u> <u>Smolen</u>, <u>supra</u>, 80 F.3d at 1283-84.

a. Activities of daily living

Regarding activities of daily living, the Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . . does not in any way detract from her credibility as to her overall disability." <u>Orn v. Astrue</u>, 495 F.3d 625, 639 (9th Cir. 2007) (*quoting* <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1050 (9th Cir. 2001)). The Ninth Circuit specified "the two grounds for using daily activities to form the basis

of an adverse credibility determination:" (1) whether or not they contradict the claimant's other testimony and (2) whether or not the activities of daily living meet "the threshold for transferable work skills." <u>Orn</u>, <u>supra</u>, 495 F.3d at 639 (*citing* <u>Fair</u>, <u>supra</u>, 885 F.2d at 603). As stated by the Ninth Circuit, the ALJ "must make 'specific findings relating to the daily activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination. <u>Orn</u>, <u>supra</u>, 495 F.3d at 639 (*quoting* <u>Burch v. Barnhart</u>, 400 F.3d 676, 681 (9th Cir. 2005)).

In response to plaintiff's arguments regarding plaintiff's credibility and activities of daily living, defendant contends that plaintiff "misconstrues the ALJ's finding," and that in this matter, "the ALJ was noting the inconstancy between her testimony and her activities, as it indicated a lack of believability" (<u>see</u> Response, ECF No. 20). However, although the ALJ listed a number of plaintiff's activities of daily living, he failed to indicate a single allegation of plaintiff or a single sentence of plaintiff's testimony that was inconsistent with plaintiff's activities of daily living (<u>see</u> Tr. 24). Instead, the ALJ concluded generally that plaintiff's activities, such as interacting with friends, using a computer to interact with others and traveling out of state "belie the limitations alleged in social functioning ability" (Tr. 24). Again, the ALJ failed to specify which limitations alleged in social functioning ability he is referring to when he relies on this general finding. Defendant likewise fails to point to any testimony or allegation by plaintiff that was contradicted by her activities (<u>see</u> Response, ECF No. 20, pp. 15-16). <u>See also</u> <u>Orn</u>, <u>supra</u>, 495 F.3d at 639 (activities of daily living must "contradict the claimant's other testimony" in order to be relied on properly to discount a claimant's credibility unless

they explicitly are found to be transferable to a work setting). It is not obvious from a review of the record that plaintiff's allegations regarding social limitations, which are supported by doctor's and treating source's opinions, were inconsistent with her activities of daily living.

Although defendant argues that the ALJ noted an inconsistency between plaintiff's testimony in general, and her activities of daily living, an ALJ cannot rely on general findings, but "'must specifically identify what testimony is credible and what evidence undermines the claimant's complaints.'" See Greger, supra, 464 F.3d at 972 (*quoting* Morgan, supra, 169 F.3d at 599). Instead, here, the ALJ relied on the general finding that plaintiff's "activities of daily living are consistent with an ability to perform medium work" (see Tr. 24). Such reliance on general findings, without discussion of which specific testimony or allegation was inconsistent with enumerated activities of daily living, is not proper. See Greger, supra, 464 F.3d at 972 (*quoting* Morgan, supra, 169 F.3d at 599); see also Orn, supra, 495 F.3d at 639.

b. Lack of medical treatment

Here, the ALJ found that plaintiff's medical record revealed a lack of medical treatment (Tr. 24). He also concluded that if plaintiff was "disabled, she would have sought out or received more frequent treatment" (id.). This conclusion was relied on, in part, to support the ALJ's failure to credit fully plaintiff's testimony and credibility (see id.).

Although it often is the case that a claimant's failure to comply with prescribed treatment calls into question the severity of the claimant's symptoms, this generally is

because such failure suggests that the claimant willfully is failing to submit to medical treatment because she wishes to remain disabled and receive benefits, or because she is not suffering from that severe of an impairment if not doing everything possible to remedy it. <u>See</u> 20 C.F.R. § 404.1530 ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled"); <u>see also</u> SSR 96-7 1996 SSR LEXIS 4, at *21-*22 ("the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints. . . . and there are no good reasons for this failure"); <u>but see Nichols v. Califano</u>, 556 F.2d 931, 932 (9th Cir. 1977) (even if a condition could be remedied by surgery, if the claimant's "actions were reasonable under the circumstances, then the district court's judgment upholding the [written decision by the ALJ] must be reversed"). However, a good reason can provide a valid excuse for not following prescribed treatment, such as that a treating family physician does not recommend the treatment, or that it is excessively painful or dangerous. 20 C.F.R. § 404.1530; SSR 96-7 1996 SSR LEXIS 4, at *21-*22; <u>Nichols</u>, <u>supra</u>, 556 F.2d at 933.

When a mental illness is involved, assuming that a failure to comply with prescribed treatment suggests a *willful* failure to comply with prescribed treatment can be illogical. This is in part because a person suffering from a mental illness may not realize that she needs her medication, or she may not even realize that her "condition reflects a potentially serious mental illness." <u>See</u> <u>Van</u> <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1465 (9th Cir. 1996)). "'[I]t is a questionable practice to chastise one with a mental impairment for

the exercise of poor judgment in seeking rehabilitation.'" Id. (*quoting* with approval, Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1989)).

When a person suffers from a mental illness, especially a severe one such as the severe Asperger's disorder and depression suffered by plaintiff here, (see Tr. 18), and the mentally ill person does not have the requisite insight into her condition, or does not have the social ability to seek out mental health treatment, this fact actually can indicate a greater severity of mental incapacity. See Van Nguyen, supra, 100 F.3d at 1465; see also Blankenship, supra, 874 F.2d at 1124. Therefore, the Court concludes that the ALJ's finding that plaintiff's lack of medical treatment demonstrated that she was not disabled does not provide much support for the ALJ's decision to fail to credit fully her testimony. See Van Nguyen, supra, 100 F.3d at 1465; see also Blankenship, supra, 874 F.2d at 1124.

In addition, according to Social Security Ruling, (hereinafter "SSR"), SSR 96-7, "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7 1996 SSR LEXIS 4 at *22; see also Regennitter v. Comm'r SSA, 166 F.3d 1294, 1296 (9th Cir. 1999).

First, as noted, the ALJ failed to consider whether or not plaintiff's mental impairments may have explained adequately plaintiff's lack of treatment. However, an ALJ must not rely on a lack of treatment in order to draw the inference that a claimant is

not disabled without first considering any information presented in the record that may have explained such lack of treatment. See SSR 96-7 1996 SSR LEXIS 4, at *22.

In addition, the record includes plaintiff's testimony that she stopped receiving treatment for her anxiety, as well her social and emotional issues caused by her Asperger's disorder, because her "parents could no longer afford to pay for it" (Tr. 41-42). Again, this alleged fact should have been considered explicitly by the ALJ before he drew "any inferences about [plaintiff]'s symptoms and their functional effects." See SSR 96-7 1996 SSR LEXIS 4 at *22; see also Regennitter, supra, 166 F.3d at 1296 ("Although we have held that 'an unexplained, or inadequately explained failure to seek treatment can cast doubt on the sincerity of a claimant's pain testimony,' we have proscribed the rejection of a claimant's complaint for lack of treatment when the record establishes that the claimant could not afford it") (citations, ellipses and brackets omitted).

Although defendant presents an analysis as to why the potential justifications in the record do not explain adequately plaintiff's lack of treatment, it is the original adjudicator, i.e., the ALJ, who must consider potential explanations existing in the record before drawing inferences about a claimant's symptoms and limiting effects. See SSR 96-7 1996 SSR LEXIS 4 at *22; see also Bray, supra, 554 F.3d at 1226-27 ("[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking"); see also Chenery Corp., supra, 332 U.S. at 196 (citations omitted)). For the Court to explain away potential justifications in the record for a claimant's lack of treatment after the ALJ has relied on

the lack of treatment in order to support his failure to credit fully the claimant's testimony and credibility is not proper. See Bray, supra, 554 F.3d at 1226-27; SSR 96-7 1996 SSR LEXIS 4 at *22; see also; Regennitter, supra, 166 F.3d at 1296; cf. Stout, supra, 454 F.3d at 1054 ("the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony").

For the reasons stated, the Court concludes that the ALJ's reliance on plaintiff's lack of treatment was not proper and therefore provides no support for the ALJ's failure to credit fully plaintiff's testimony and credibility.

c. Objective medical evidence

The first two reasons supplied by the ALJ regarding plaintiff's credibility that were discussed by Court have been found to be relied on improperly. The only additional reason relied on by the ALJ was the finding that "the objective clinical findings do not support the claimant's alleged subjective symptoms or functional limitations" (see Tr. 21). However, once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony "based solely on a lack of objective medical evidence to fully corroborate the alleged severity" of the symptoms. See Bunnell, supra, 947 F.2d at 343, 346-47 (citing Cotton, supra, 799 F.2d at 1407). For this reason, and based on a review of the medical evidence, the Court concludes that the finding of a lack of support from "the objective clinical findings" does not amount to clear and convincing reasons for his failure to credit fully plaintiff's credibility and testimony. See Bunnell, supra, 947 F.2d at 343, 346-47 (citing Cotton, supra, 799 F.2d at 1407). This is especially the case here, as in this matter, the ALJ failed to discuss a very thorough

evaluation in the record, prepared by a specialist in a very relevant specialty (see Tr. 567-87; see also, infra, section 2.a (Dr. Bernou is a clinical neuropsychologist who specializes "in the evaluation and diagnosis of learning disabilities, ADHD/ADD, cognitive, developmental & psychiatric disorders")).

For the reasons discussed and based on the relevant record, the Court concludes that the ALJ failed to evaluate properly plaintiff's credibility and testimony.

2. <u>The ALJ failed to evaluate the medical evidence properly</u>.

"A treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record." <u>Edlund v. Massanari</u>, 2001 Cal. Daily Op. Srvc. 6849, 2001 U.S. App. LEXIS 17960 at *14 (9th Cir. 2001) (<i>citing</i> SSR 96-2p, 1996 SSR LEXIS 9); see also 20 C.F.R. § 416.902 (treating physician is one who provides treatment and has "ongoing treatment relationship" with claimant). However, "[t]he ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." <u>Batson v. Commissioner of Social Security Administration</u>, 359 F.3d 1190, 1195 (9th Cir. 2004) (<i>quoting</i> <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996) (<i>citing</i> <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1396 (9th Cir. 1991); <u>Pitzer v. Sullivan</u>, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining physician's opinion is contradicted, that opinion "can only be

rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Lester, supra, 81 F.3d at 830-31 (*citing* Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick, supra, 157 F.3d at 725 (*citing* Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

In addition, the ALJ must explain why his own interpretations, rather than those of the doctors, are correct. Reddick, supra, 157 F.3d at 725 (*citing* Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988)). However, the ALJ "need not discuss *all* evidence presented." Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam).  The ALJ must only explain why "significant probative evidence has been rejected."  Id. (*quoting* Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981)).

In general, more weight is given to a treating medical source's opinion than to the opinions of those who do not treat the claimant.  Lester, supra, 81 F.3d at 830 (*citing* Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987)).  On the other hand, an ALJ need not accept the opinion of a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings or by the record as a whole. Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004) (*citing* Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).

The Court already has determined that the ALJ erred in his review of plaintiff's testimony and credibility, see supra, section 1. As that error is not harmless, this matter

should be reversed and remanded for further administrative proceedings. See Bayliss,

supra, 427 F.3d at 1214 n.1 (citing Tidwell, supra, 161 F.3d at 601); see also Smolen,

supra, 80 F.3d at 1283-84; Reddick, supra, 157 F.3d at 722. For this reason, based on the

relevant record, and for the reasons elucidated below, the Court also concludes that the

medical evidence should be evaluated anew following remand of this matter.

    a.  Dr. Elea A. Bernou, Psy.D. ("Dr. Bernou")

    Dr. Bernou examined plaintiff; conducted many psychological and intelligence

tests[1]; and compiled a thorough report regarding plaintiff's impairments and limitations

(see Tr. 567-87; see also Tr. 260). Dr. Bernou is a clinical neuropsychologist who

specializes "in the evaluation and diagnosis of learning disabilities, ADHD/ADD,

cognitive, developmental & psychiatric disorders" (see Tr. 567). She reviewed and

coalesced information from multiple sources, including "a review of Kaiser medical and

psychiatric records, and interviews with [plaintiff], h[er] family members and treatment

providers" (Tr. 568).

    Dr. Bernou assessed plaintiff's developmental and social history as "unusual," and

noted plaintiff's sitting-up late, never crawling and failing to walk until 14-15 months, as

well as her early social difficulties (see Tr. 568, 569). She also noted that plaintiff "has

---

[1] The tests administered included "Wechsler Adult Intelligence Scale – Third Edition (WAIS-3); Woodcook-Johnson Tests of Cognitive Ability & Achievement –Revised (WJ-R, selected subtests); Test of Language Competence (TLC); Developmental Test of Visual-Motor Integration (VMI); SCAN-A Test of Auditory Processing; T.O.V.A. – Visual Test of Attention; Trailmaking Tests A&B (TMT); Wisconsin Card Sorting Test (WCST); Booklet Category Test; Rey-Osterreith Complex Figure (ROCF); California Verbal Learning Test (CVLT); Wechsler Memory Scale – 3d edition (WMS-3) selected subtests; Purdue Pegboard; Grooved Pegboard; Tandem Walking; Romberg; Rorschach; Thematic Apperceptions Test; Family Kinetic Drawing; Minnesota Multiphasic Personality Inventory – 2nd Edition (MMPI-2); CAARS – Connor Adult ADHD Rating Scales – Self-Report, Long form; and Neuropsychiatric Questionnaire (see Tr. 567).

had difficulty making many crucial steps towards adulthood – such as learning to drive, holding a job, or attending classes consistently" (Tr. 568). Dr. Bernou provided a lengthy discussion regarding plaintiff's early interactions with her peers and her early and later educational history (see Tr. 569-71).

Dr. Bernou described plaintiff's work history as follows:

> [Plaintiff] had a summer job preparing softball fields for play after h[er] freshman year in high school; [s]he worked on h[er] own and completed a full summer at that job. Other jobs have included stocking at Costco, and baking at Noah's Bagels. [Plaintiff] stayed only a couple of weeks at each job; [s]he was uncomfortable with the interpersonal challenges each job presented and [s]he had difficulty getting to work on time. About 2-3 years ago, [plaintiff] also had a job doing data entry for a friend of the family; however, [s]he walked out on the job on the first day, rudely stating that [s]he, 'would not help perpetuate' h[er] boss's capitalism.

(Tr. 572).

Dr. Bernou noted plaintiff's "chronic motor and focal tics" (see id.). She noted that plaintiff's vocal tics "included snorting and throat clearing noises," of which plaintiff lacked awareness (id.). In the context of a discussion of various of plaintiff's treatment records, Dr. Bernou also noted that plaintiff had indicated that she had "run out of money for counseling" (Tr. 573).

Dr. Bernou also discussed plaintiff's medical history, including "occasional petit mal seizures from ages 6 to 10 years," as well as the fact that "twice, once at age 2, and another time at age 5, 'blacked out for 45 minutes,'" (see Tr. 572). She assessed that, regarding this issue, plaintiff's "records were incomplete, inconsistent, and often unreadable, and it was unclear whether the Kaiser neurologist felt that there might be a current underlying seizure disorder" (id.). Dr. Bernou discussed a MRI along with

neuropsychological testing and neurological evaluation that was conducted in Mexico, although these records were not sent to her despite her request (Tr. 572-72).

Dr. Bernou included an extensive psychiatric history, including a discussion of plaintiff's therapy sessions, suicidal thoughts, depression and Gender Identity Disorder (Tr. 572-74). Dr. Bernou included multiple paragraphs of objective observations, such as that plaintiff "had trouble understanding jokes that made use of figurative or abstract language" (Tr. 575). She indicated that plaintiff "often revealed a kind of naïveté by making statements typical of a young teenager with a completely straight face" (id.).

Dr. Bernou included an extremely thorough analysis of her testing results (Tr. 575-80), noting that plaintiff gave her best effort on all testing and that the "test results are considered valid and interpretively useful" (Tr. 575). Dr. Bernou included multiple paragraphs discussing plaintiff's cognitive/intellectual functioning, including some "above average" areas as well as plaintiff's simple oral arithmetic skill, which she assessed as "an area of significant weakness and [] in the low-average range" (Tr. 575-76).

Dr. Bernou begins the section on language with the observation that plaintiff's language skills and vocabulary are "areas of strength" (Tr. 576). However, she also notes that plaintiff had "difficulty making inferences regarding verbal communications that have to do with social or interpersonal topics" (id.). Dr. Bernou provided a specific example: After explaining to plaintiff the meaning of the expression "That is like the pot calling the kettle black," plaintiff replied "Yes, but I still don't see what that has to do with the blackness of the pot" (id.). Plaintiff "had difficulty with a number of other

expressions and abstract statements on testing-even when their meaning was fully explained" (id.). Dr. Bernou assessed that plaintiff's difficulty "processing abstract, emotionally toned, or figurative language, means that [plaintiff] is often confused in interpersonal or social situations, where nuance is often an important part of the interaction process" (id.).

Dr. Bernou included multiple paragraphs discussing plaintiff's attention and concentration (Tr. 576-77). Although plaintiff exhibited normal abilities on the "formal (boring, and repetitive) test of attention," Dr. Bernou found that her observations and a review of plaintiff's history revealed "some difficulties in the area of attention, particularly in social or interpersonal situations" (Tr. 577). Similarly, when assessing cognitive flexibility and executive functions, Dr. Bernou found that plaintiff excelled in "complex, but highly structured and untimed tasks" (id. (*citing* WCST and BCT)), but her performance on highly-challenging and unstructured executive tasks was "in the low-average range-significantly poorer than h[er] performance on the other more structured tasks" (id.).

Dr. Bernou included a few paragraphs of discussion each, of plaintiff's memory functioning and her visual-motor integration and motor functioning (Tr. 578). The final section of Dr. Bernou's report, other than her summary, conclusions and diagnoses, was the eight-paragraph, detailed and extensive, discussion of plaintiff personality and emotional functioning (see Tr. 579-80). She indicated that her assessment was based on "multiple strategies, including history gathering from multiple family members, objective questionnaires (i.e., CAARS, MMPI-2, and a neuropsychological questionnaire), as well

as projective measures (i.e., Rorshach, TAT, and Family Kinetic Drawing)" (Tr. 579). Dr. Bernou assessed that plaintiff did "not act like an adult, and has consistently refused or been unable to take on adult responsibilities" (Tr. 579-80). She continued, assessing that plaintiff "has been unable to maintain a job, is afraid to drive, expects others to set up h[er] appointments, keep track of h[er] appointments and, often, take h[er] to those appointments" (Tr. 580). Dr. Bernou emphasized in bold letters that plaintiff had "great difficulty in shifting his attention from one area of interest or concern to another, because of a cognitive propensity towards inflexibility in his thinking" (Tr. 580).

Dr. Bernou's summary and conclusions comprise approximately ten paragraphs of detailed findings (see Tr. 580-82). For example, she opined that plaintiff would "need support to find work and/or a career where [s]he can function primarily on h[er] own, and where h[er] employer has some understanding of h[er] needs and limitations" (Tr. 581). Dr. Bernou diagnosed plaintiff with "Asperger's Disorder (with concomitant attentional difficulties, obsessional behavior, pragmatic language difficulties, and a significant weakness in his ability to recognize and differentiate human faces); Trouettes' Disorder (multiple simple motor tics, as well as at least one vocal tic); Depression Not Otherwise Specified; Gender Identity Disorder; Mathematics Disorder; and Learning Disorder NOS (visual tracking difficulties; fine motor deficits; slow processing/scanning speed; poor planning and organizational skills; problems with written expression)" (Tr. 582). Dr. Bernou additionally included approximately two pages of recommendations (Tr. 582-84).

Based on a review of the relevant record, the Court finds that Dr. Bernou's report was consistent with the record as a whole. The Court also concludes that her report

contained much significant, probative evidence, only some of which has been detailed by

the Court herein. See Vincent, supra, 739 F.2d at 1394-95 (*quoting* Cotter, supra, 642

F.2d at 706-07). Nevertheless, the ALJ here failed to discuss Dr. Bernou's report and

opinions, and failed to give any reason for his failure to adopt her detailed observations,

assessments and recommended plans. The Court is not convinced by defendant's

argument that "the ALJ did not need to explain why he rejected Dr. Bernou's evaluation,

because he did not reject it" (Response, ECF No. 20, p. 6).

For example, the ALJ did not adopt Dr. Bernou's opinion that plaintiff would

"need support to find work and/or a career where [s]he can function primarily on h[er]

own, and where h[er] employer has some understanding of h[er] needs and limitations"

(Tr. 581). This opinion conflicts with the ALJ's finding regarding plaintiff's residual

functional capacity that plaintiff was "able to get along with others, understand simple

instructions, concentrate on and perform simple tasks, and respond and adapt to changes

in the workplace and supervision in a limited public and employee contact setting" (see

Tr. 20).

According to Social Security Ruling ("SSR") 96-8p, a residual functional capacity

assessment by the ALJ "must always consider and address medical source opinions. If the

RFC assessment conflicts with an opinion from a medical source, the adjudicator must

explain why the opinion was not adopted." SSR 96-8p, 1996 SSR LEXIS 5 at *20. The

ALJ failed to do so here. See id.

Similarly, the Court concludes that the ALJ's hypothetical to the vocational

expert, on whose testimony the ALJ relied when making his step-five determination

regarding plaintiff's ability to perform work existing in the national economy, also did not contain the limitations on plaintiff's ability to work as opined by Dr. Bernou (see Tr. 28, 581). For this reason, and based on the relevant record, the Court concludes that the ALJ's step-five finding is not based on substantial evidence in the record as a whole.

b. Dr. Christopher Nelson, Ph.D., Licensed Psychologist, ("Dr. Nelson")

Dr. Nelson examined and evaluated plaintiff on September 28, 2004 (see Tr. 261-66). He listed his evaluation procedures as entailing a clinical interview; mental status examination ("MSE"); records review; and various tests, including Gilliam Asperger's Disorder Scale; Millon Clinical Multiaxial Inventory-III ("Millon test"); Rotter Incomplete Sentences Blank; Thematic Apperception Test; and Beck Depression Inventory (see Tr. 261). Dr. Nelson included his objective observations that plaintiff's appearance was consistent with that of a woman, she exhibited a motor tic, and she also exhibited a "general lack of awareness of social codes" (Tr. 262). He also observed that plaintiff's affect was anxious and congruent with the content of speech (id.). He noted that many of plaintiff's MSE results were within normal measures (id.).

Dr. Nelson included some of plaintiff's objective test scores and a discussion of her test results, including results on the Millon test which "depict an Avoidant Personality with co-occurring anxiety" (Tr. 264; see also Tr. 263). He indicated that plaintiff's "results are consistent with an Asperger's Disorder presentations as these individual have a history of negative interpersonal experiences because they lack repair skills and a framework for understanding social relationships" (Tr. 264). Dr. Nelson also found that plaintiff's test results on the Thematic Apperception Test, "likely reflect impaired 'theory

of mind' skills" (id.). He explained further: "Theory of mind refers to the notion that many autistic-spectrum individuals do not understand that other people have their own plans, thoughts, and points of view. Furthermore, it appears that they have difficulty understanding other people's beliefs, attitudes and emotions" (id.).

Dr. Nelson included his concluding summary:

> The results for the Millon, Rotter, TAT, and GADS confirm Jennifer's belief that she experiences Asperger's Disorder. Specifically, she: has failed to develop peer relationships appropriate to developmental levels; displays impairment in the use of multiple nonverbal behaviors such as eye-to-eye gaze, facial expression, body posture, and gestures to regulate social interaction; lack of spontaneous seeking to share enjoyment, interest, or achievements with other people; and displays a lack of social and emotional reciprocity. Jennifer is eligible for long-term disability as well as vocational assistance from the Department of Developmental Disabilities as her disturbance causes significant impairment in activities of daily living.

(Tr. 265).

Dr. Nelson diagnosed plaintiff with Asperger's Disorder; Chronic Motor Tic Disorder; Depressive Disorder NOS by history; Anxious Features; social and occupational problems; and a global assessment of functioning ("GAF") of 50 (id.). He opined that plaintiff "will do better in a 'safe' work environment that has fewer social demands" (Tr. 266).

The ALJ discussed some of the report by Dr. Nelson (see Tr. 22-24, 26). However, the ALJ gave Dr. Nelson's opinion "little weight because it is unsupported by objective clinical findings and is inconsistent with the evidence considered as a whole" (see Tr. 26-27).For the reasons discussed below, the Court concludes that the ALJ failed to evaluate properly Dr. Nelson's opinions.

Dr. Nelson was an examining doctor and not a treating doctor; however the Court notes as a preliminary matter that a somewhat analogous situation has been presented to the Ninth Circuit. In a case in which the Ninth Circuit found that an ALJ had failed to provide specific and legitimate reasons supported by substantial evidence in the record for the failure to credit fully the opinion of a treating physician, the written decision by that ALJ had included the following discussion:

> The opinions of total disability tended [sic] in the record are unsupported by sufficient objective findings and contrary to the preponderant conclusions mandated by those objective findings. The duration of the claimant's stress treadmill testings and relative lack of positive findings, the results of other laboratory and x-ray testing, the objective observations of the physicians of record, all preponderate toward a finding that the claimant has never lost the residual functional capacity for light work for any period approaching 12 months.

Embrey v. Bowen, 849 F.2d 418, 421 (9th 1988). The Ninth Circuit Court found that these statements were not sufficient to discount the doctors' opinions, even though the ALJ in Embrey had reviewed the medical evidence. Id. (citations omitted). The court explained:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. Moreover[,] the ALJ's analysis does not give proper weight to the subjective elements of the doctors' diagnoses. The subjective judgments of treating physicians are important, and properly play a part in their medical evaluations.

Id. at 421-22 (internal footnote omitted).

Although Dr. Nelson was an examining doctor, and not a treating doctor as was the doctor whose opinion was rejected in <u>Enbrey</u>, the Court nevertheless finds that the ALJ's explanation for the rejection of Dr. Nelson's opinions here similarly was insufficient, as discussed further below. <u>See</u> <u>id.</u>; <u>see also</u> <u>Reddick</u>, <u>supra</u>, 157 F.3d at 725.

Although the ALJ found that Dr. Nelson's opinions were unsupported by objective clinical findings, Dr. Nelson's opinions were supported by his objective observations during his clinical interview of plaintiff, such as that she exhibited a "general lack of awareness of social codes" (<u>see</u> Tr. 262). Dr. Nelson's opinions also were supported by his objective observations during the conduction of the MSE, such as plaintiff's anxious affect and restricted mood (<u>see</u> <u>id.</u>). In addition, Dr. Nelson's opinions were supported by plaintiff's results on the Millon, which indicated that plaintiff suffered from "an Avoidant Personality with co-occurring anxiety" (<u>see</u> Tr. 263; <u>see also</u> Tr. 64 (score of 98 on the Avoidant subtest of the clinical personality patterns; score of 77 on Anxiety subtest of the clinical syndromes)).

Based on the relevant record and for the reasons stated, the Court concludes that the ALJ's finding that Dr. Nelson's opinions were "unsupported by objective clinical findings" is not based on substantial evidence in the record as a whole. <u>See</u> <u>Magallanes</u>, <u>supra</u>, 881 F.2d at 750. Based on a review of the relevant record, the Court also notes that Dr. Nelson's opinions appear largely to be consistent with the opinion and report by Dr. Bernou, which the ALJ erroneously failed to discuss (<u>see</u> Tr. 567-87; <u>see also</u> Tr. 260). As Dr. Nelson's opinions also appear largely to be consistent with the opinions of Mr. James Faust, MA, LMHC, NCC, the Court concludes that the ALJ's finding that Dr.

Nelson's opinions were "inconsistent with the evidence considered as a whole," likewise is a finding not based on substantial evidence in the record as a whole. See Magallanes, supra, 881 F.2d at 750.

c.  Mr. James Faust, MA, LMHC, NCC, ("Mr. Faust")

Although Mr. Faust was not an "acceptable medical source," that is, a source "who can provide evidence to establish an impairment," see 20 C.F.R. § 404.1513 (a), he was a treating "other medical" source. See 20 C.F.R. § 404.1513 (a), (d)(1); see also Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1223-24 (9th Cir. 2010) (citing 20 C.F.R. § 404.1513(a), (d)); Social Security Ruling "SSR" 06-3p, 2006 SSR LEXIS 5, 2006 WL 2329939). As such, his opinion was "competent evidence," which an ALJ may not discredit "as not supported by medical evidence in the record." See Bruce v. Astrue, 557 F.3d 1113, 1116 (9th Cir. 2009) (quoting Van Nguyen, supra, 100 F.3d at 1467) (citing Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996)).

As the ALJ acknowledged, Mr. Faust was a treating source (see Tr. 25). The ALJ included a discussion of Mr. Faust's opinions, however gave them "little weight" (see Tr. 25). The Court notes that the opinions of Mr. Faust are consistent with Dr. Nelson's opinion, which was not evaluated properly by the ALJ; and are consistent with Dr. Bernou's very extensive evaluation, which was not discussed at all by the ALJ.

Therefore, although the ALJ provided a number of reasons for his failure to credit fully the opinions from Mr. Faust; because this Court already has decided that this matter must be reversed and remanded for a proper review of plaintiff's credibility as well as the medical evidence provided by Drs. Bernou and Nelson; and based on the relevant record,

the Court concludes that the treatment record and opinions of Mr. Faust should be evaluated anew following remand of this matter.

    3.  <u>The record should be developed following remand</u>.

The ALJ "has an independent 'duty to fully and fairly develop the record.'" <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1150 (9th Cir. 2001) (*quoting* <u>Smolen v. Chater</u>, 80 F.3d 1273, 1288 (9th Cir. 1996)). The ALJ's "duty exists even when the claimant is represented by counsel." <u>Brown v. Heckler</u>, 713 F.2d 441, 443 (9th Cir. 1983) (per curiam) (*citing* <u>Driggins v. Harris,</u> 657 F.2d 187, 188 (8th Cir. 1981)).  This duty is "especially important when plaintiff suffers from a mental impairment." <u>Delorme v. Sullivan</u>, 924 F.2d 841, 849 (9th Cir. 1991). This is "[b]ecause mentally ill persons may not be capable of protecting themselves from possible loss of benefits by furnishing necessary evidence concerning onset." <u>Id.</u> (*quoting* Social Security Regulation 83-20). However, the ALJ's duty to supplement the record is triggered only if there is ambiguous evidence or if the record is inadequate to allow for proper evaluation of the evidence. <u>Mayes v. Massanari</u>, 276 F.3d 453, 459-60 (9th Cir. 2001); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1150 (9th Cir. 2001).

Prior to the hearing on plaintiff's application for child disability benefits, plaintiff's attorney notified the ALJ that plaintiff had been receiving Supplemental Security Income benefits since February, 2005 (<u>see</u> Tr. 254; <u>see also</u> Tr. 94-99, 203). In addition, plaintiff's attorney specifically requested a copy of plaintiff's file on her Supplemental Security Income benefits (<u>see</u> Tr. 254).

Regarding the ALJ's duty to develop the record, plaintiff argues that the ALJ "had an affirmative duty to ensure that the record was complete by obtaining a copy of [plaintiff]'s disability file from her 2005 application for benefits," and explicitly "review[ing] the evidence and favorable decision from [plaintiff]'s 2005 application for disability benefits" (see Opening Brief, ECF No. 14, pp. 3-4). In her Reply Brief, plaintiff contends that she is unable to respond fully to defendant's arguments "because she has been denied access to the evidence which would make it possible for her to respond" (Reply, ECF No. 23, pp. 2-3).

This Court already has concluded that this matter should be reversed and remanded for a new hearing and decision. Therefore, for this reason and based on the relevant record, the Court concludes that plaintiff's prior Supplemental Security Income benefits file should be included explicitly into the record regarding this claim at bar for child disability benefits. Furthermore, a copy should be provided to plaintiff's attorney.

Similarly, following remand, plaintiff's residual functional capacity ("RFC") should be assessed anew subsequent to a proper evaluation of plaintiff's testimony and the medical evidence. Based on the relevant record, the Court concludes that the entire five-step sequential disability evaluation process should be completed anew.

4. This matter should be reversed and remanded for a new hearing and new decision, not an award of benefits.

The Ninth Circuit has put forth a "test for determining when evidence should be credited and an immediate award of benefits directed." Harman v. Apfel, 211

F.3d 1172, 1178, 2000 U.S. App. LEXIS 38646 at **17 (9th Cir. 2000). It is

appropriate where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Harman, supra, 211 F.3d at 1178 (*quoting* Smolen v. Chater, 80 F.3d 1273, 1292 (9th

Cir.1996)).

Here, the medical evidence of record is not conclusive. See Smolen, 80 F.3d at

1292. There is a large volume of medical and other evidence, and there is significant,

probative evidence in the record that was not evaluated by the ALJ.

The ALJ is responsible for determining credibility and resolving ambiguities and

conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998);

Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). If the medical evidence in the

record is not conclusive, sole responsibility for resolving conflicting testimony and

questions of credibility lies with the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th

Cir. 1999) (*quoting* Waters v. Gardner, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing*

Calhoun v. Bailar, 626 F.2d 145, 150 (9th Cir. 1980))).

Therefore, remand is appropriate in order to allow the Commissioner the

opportunity to consider properly all of the medical evidence as a whole and to incorporate

the properly considered medical evidence into a proper consideration of plaintiff's credibility and residual functional capacity. See Sample, supra, 694 F.2d at 642.

Remanding the matter will allow the Commissioner the opportunity not only to reconsider its decisions during the sequential disability evaluation process, but also to consider the evidence plaintiff submitted to the Appeals Council from Dr. Bernou, as well as Dr. Bernou's thorough report and evaluation (see Tr. 4-5, 260, 567-87).

CONCLUSION

The ALJ did not evaluate properly plaintiff's credibility or the medical evidence. He failed to provide clear and convincing reasons to discount plaintiff's testimony and failed to evaluate significant, probative medical evidence in the record. The ALJ also failed to provide specific and legitimate reasons for discounting the medical opinion of Dr. Nelson.

Based on these reasons, and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. See 28 U.S.C. § 636(b)(1)(C).

Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on July 20, 2012, as noted in the caption.

Dated this 28th day of June, 2012.

J. Richard Creatura
United States Magistrate Judge